FREDERICK X. RESCIGNO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rescigno v. Commissioner
Docket No. 21933-89
United States Tax Court
T.C. Memo 1991-479; 1991 Tax Ct. Memo LEXIS 528; 62 T.C.M. (CCH) 854; T.C.M. (RIA) 91479; September 26, 1991, Filed *528 Decision will be entered under Rule 155. Frederick X. Rescigno, pro se. Julie M. T. Foster, for the respondent CANTREL, Special Trial Judge. CANTREL
MEMORANDUM FINDINGS OF FACT AND OPINION This case was assigned and heard pursuant to section 7443A(b)(3) and Rule 180 et seq. [1]
Respondent, in his notice of deficiency issued to petitioner on June 8, 1989, determined a deficiency in petitioner's Federal income tax for the calendar year 1986 in the amount of $ 4,948. After a concession by petitioner, the issue framed by the parties is whether a $ 20,000 payment, paid to petitioner's wholly owned corporation upon the termination of two contracts and reported by petitioner on his 1986 return, represents capital gain from the sale of a capital asset, or ordinary income in the form of compensation and damages. We have determined the issue to *529 be whether the $ 20,000 payment is taxable to petitioner as a constructive dividend. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioner resided in Norcross, Georgia, at the time the petition was filed. Prior to the year in issue, petitioner operated a sole proprietorship under the business name of R&D Wire and Cable (R&D). R&D functioned as a manufacturer's representative for four different companies in the southeast. Under a representative agreement with Lynn Electronics Corporation (Lynn) dated June 1, 1983, and amended February 6, 1984, R&D was the exclusive sales representative of Lynn's wire product line in Florida, Georgia, North Carolina, and South Carolina. R&D received a 5 percent commission on its sales of Lynn products. The term of the agreement extended from year to year and was terminable by either party without cause upon 6 months' written notice. In the event of such notice, R&D was entitled to commissions earned during those 6 months. R&D became a Georgia corporation in February of 1985, with petitioner as its majority stockholder *530 and sole employee. R&D received a tax identification number in April of 1985, and filed a Form 1120 U.S. Corporate Income Tax Return for its first fiscal year beginning March 1, 1985, and ending February 28, 1986. On July 1, 1985, petitioner, in his capacity as president of R&D, hired Mary Lee Whelchel (Whelchel) to work for R&D. Under an independent contractor agreement with R&D, Whelchel received up to a 3-percent commission on her sales of products of the companies represented by R&D. In consideration for the contract with R&D, Whelchel agreed not to pursue or accept to represent any firm being represented by R&D for a 3-year period. The agreement recites that it shall continue in effect until terminated by mutual agreement or by either party upon 30 days' written notice. Sometime after July 1, 1985, Lynn approached Whelchel and offered her employment representing its product line directly. Aware of the agreement between Whelchel and R&D, Lynn offered $ 20,000 to R&D to release Whelchel from her contract and to release Lynn from the exclusive representative agreement with R&D. Citing a dispute between R&D and Lynn regarding their representative agreement under which R&D *531 exclusively handled Lynn's product line, and Whelchel's desire to terminate her contract with R&D so that she could be employed by Lynn, petitioner, Lynn, R&D, and Whelchel entered into a "Mutual Release" (Release) on December 30, 1985. Under the terms of the Release, Lynn agreed to pay R&D $ 20,000 in January of 1986, hired Whelchel as an employee, and released R&D, petitioner, and Whelchel, from any and all liability, actions, causes of action and/or claims which Lynn might have had against them. R&D agreed to void Whelchel's contract with R&D, and petitioner and R&D agreed to release Lynn and Whelchel from any claims petitioner or R&D might have had against them "including but not limited to the Representative Agreement and any violations of her contract with R&D by Whelchel and/or Lynn." Whelchel agreed to release Lynn, R&D, and petitioner from any claims she might have had against them, including but not limited to any unpaid commissions allegedly due from R&D in the voiding of her contract with R&D. The terms of the Release did not allocate the $ 20,000 consideration to be paid by Lynn in 1986. On January 9, 1986, Lynn issued a $ 20,000 check made out to R&D Wire & Cable. *532 On the back, the following endorsements appear: a handwritten "R & D Wire & Cable"; a stamped "R & D Wire & Cable Co." with an address; and petitioner's signature. The parties stipulated that the $ 20,000 check was then deposited into petitioner's personal bank account and used for personal expenditures. The $ 20,000 payment was properly includable in the corporate entity R&D's gross income. R&D did not report the $ 20,000 payment on the Form 1120, for its fiscal year 1986, ending February 28, 1986. Instead, petitioner reported the $ 20,000 as long-term capital gain from a contract settlement on Schedule D of his 1986 individual Federal income tax return. By statutory notice, respondent determined that there was not a sale or exchange of a capital asset, and therefore the $ 20,000 should be taxable as ordinary income to petitioner. [2]
*533 In fiscal year 1986, the parties agree that R&D's current and accumulated earnings and profits were $ 8,859. Petitioner's basis in his R&D stock on the date he endorsed the check from Lynn was $ 500. OPINION After consideration of the contracts entered into and made part of the record of this case, we have decided that R&D, not petitioner, is the entity properly taxable on the $ 20,000 payment received in consideration for the Release. The parties stipulated that the Release terminated R&D's representative agreement with Lynn, and R&D's independent contractor agreement with Whelchel. Petitioner signed each agreement on R&D's behalf; hence R&D was the contracting party in both agreements. Whelchel was contractually obligated not to compete with R&D for 3 years. The parties' stipulation reflects the explicit language of the Release: Lynn agreed to pay R&D $ 20,000 no earlier than January 1, 1986. The record is clear on this point. Indeed, the Release recites without equivocation that Lynn was "to pay unto R&D the sum of Twenty Thousand ($ 20,000.00) Dollars." We conclude that petitioner incorrectly reported the $ 20,000 payment as consideration for the Release received *534 in his individual capacity. The check from Lynn was made out to R&D, endorsed by it, and then by petitioner. The parties stipulated that petitioner received and used the money in his individual capacity. We have decided that he diverted it from the corporate entity R&D to his own personal checking account for his own personal use. Therefore, we hold that petitioner is taxable on the $ 20,000 as a constructive dividend from R&D. A distribution of property to a shareholder in his capacity as such, is subject to section 301 even though the distribution is not declared in a formal fashion as a dividend. Truesdell v. Commissioner, 89 T.C. 1280, 1295 (1987); B. Bittker and J. Eustice, Federal Income Taxation of Corporations and Shareholders, par. 7.05, p. 7-25 (5th ed. 1987). The distribution is a dividend includable in the shareholder's gross income under sections 301(c)(1) and 61(a)(7), if and to the extent that it comes out of the corporation's current or accumulated earnings and profits. Section 316(a). The excess amount is a return of capital to the shareholder under section 301(c)(2), and is applied against and in reduction of the adjusted basis of the shareholder's stock. *535 Any remaining amount is treated as gain from the sale or exchange of property. Sec. 301(c)(3)(A). Petitioner bears the burden of proving that R&D had insufficient earnings and profits to cover the $ 20,000 distribution. Petitioner stipulated that R&D's unadjusted earnings and profits were $ 8,859 for fiscal year 1986. We have decided that R&D had unreported income of $ 20,000 for fiscal year 1986. R&D's current earnings and profits for that year must be increased to reflect the unreported income. Sec. 1.312-6(b), Income Tax Regs. From this record, we conclude that the entire amount of the distribution is taxable to petitioner as a dividend under section 301(c)(1). The parties agreed that petitioner may claim income averaging on Schedule G for 1986, if he so qualifies. Additionally, we note that petitioner has already availed himself of the dividends received exclusion under section 116 for 1986. Based upon the foregoing, Decision will be entered under Rule 155. Footnotes
1. Section references are to sections of the Internal Revenue Code in effect for the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. We note that petitioner argued Lynn's payment was in exchange for Whelchel's release from her independent contractor agreement with R&D, which petitioner considers a capital asset. The Whelchel contract was held by R&D for less than 6 months. The tax consequences, therefore, of accepting either party's position as presented, are substantially the same because if the consideration received for the Whelchel contract was not ordinary income, it would have been short-term capital gain under sec. 1211(1).↩